GEORGE BENDER v. GREAT NORTHERN RAILWAY COMPANY.[1]

May 1, 1903.

Nos. 13,258—(12).

**Defective Instrument—Assumption of Risk.**

> *Held*, in a personal injury action, that there was sufficient testimony to justify the jury in finding that the defendant was negligent in failing to keep certain parts of a steam shovel, about which plaintiff was at work, in good repair, and that this negligence was the proximate cause of injuries inflicted upon him, and also that the question of an assumption of risk by plaintiff was one for the jury to determine.

Action in the district court for Polk county to recover $10,000 for personal injuries. The case was tried before Watts, J., and a jury, which rendered a verdict in favor of plaintiff for $1,500. From an order denying a motion for judgment notwithstanding the verdict, defendant appealed. Affirmed.

*J. W. Mason* and *A. C. Wilkinson*, for appellant.

*R. J. Montague*, for respondent.

COLLINS, J.

This action was brought to recover for personal injuries sustained by the plaintiff while in the employ of defendant, in the state of Montana, as a laborer about a steam shovel. The jury returned a verdict for the plaintiff. Thereupon defendant moved to set it aside, and for judgment notwithstanding the same, and appeals from an order denying this motion.

The particular negligence upon which plaintiff relied was, first, the retention by defendant of two negligent, careless, and incompetent servants, one of whom ran the engine which operated the crane boom of the shovel, while the other ran the engine which operated the dipper arm; and, second, that the swinging circle or plate at the foot of the crane boom was broken and out of repair, and that the lubricator on the engine which ran the dipper arm was also out of order, and did not work properly, all of which defendant well knew.

[1] Reported in 94 N. W. 546.

1. We have examined the record in this case with a great deal of care, and have arrived at the conclusion that, on the testimony, it was for the jury to say whether the swinging circle or plate, which had been broken prior to the accident, and was out of order at the time, and was defective, was or was not the proximate cause of the injury. One of the witnesses testified that this defect rendered the crane boom unsafe. Just exactly how, was not shown, nor was an attempt made to show; but it can well be inferred from the testimony that it rendered the motion less steady, and also made it more difficult for the engineer properly to handle the boom. The defect must necessarily have had some effect upon the swinging movement of the boom, as well as the proper movement of the dipper arm. A witness who testified that the swinging circle or plate had been repaired prior to the accident also stated that it remained in good working condition but a day or two, so that for several days before the plaintiff was injured the circle had been in bad order. There was also testimony from which the jury were warranted in finding that, because of a defective lubricator, it was much more difficult for the engineer properly to handle the levers which put in motion and operated the dipper arm, and to control the movements of the same after put in motion. It is true that the witnesses were not very specific on these matters, but, as before stated, we think a case was fairly made for the jury on the question of defendant's negligence in these particular respects, and, further, that they were justified in finding that defendant's representatives on the ground knew or should have known of the defects in the swinging circle or plate and the lubricator.

2. It is urged that, even if this be so, the plaintiff assumed the risks of his employment, as ordinarily incident thereto. By means of the crane boom the dipper arm was moved to the right or left, covering a semicircular space ten or fifteen feet wide and about forty feet in length. This arm was used to lower the dipper, then to fill with earth, and when filled to raise the dipper so that by means of the boom it could be swung to the place where it was to be emptied. It seems to be conceded that all during the time plaintiff was at work this dipper was not managed or used in the

ordinary manner, which would be to commence upon one side of
the semicircular space, and steadily dig and remove the earth to
the other side.   Instead of doing this with any regularity, the
dipper seems to have been dropped almost anywhere within this
space, and to have been exceedingly uncertain in its movements.
Had the plaintiff been struck by the descending dipper, it might
well be urged that he assumed the risks, for he worked with these
methods existing and well known to him for more than twenty
days before he was hurt.   But there is no claim that he was in-
jured by the dipper suddenly dropping upon him.   As the shovel
car was moved forward on six-foot rails laid upon three ties, a
six-foot section of ties and rails in the rear was released; the
section was then taken up, and three ties carried forward, and
two of them loosely placed on the rails of another section in front
of the car wheels—what for, does not appear.   On this particular
occasion two of these ties were laid down just in front of the
wheels, the ends projecting several inches over the rails.

None of the witnesses who testified saw the accident, and none
—not even the plaintiff himself—knew precisely how it occurred;
but the testimony was sufficient to warrant the jury in finding
that while the plaintiff was at work, with a hand shovel, very close
to and in front of the car, the dipper suddenly dropped, struck the
ends of the ties in front of the wheels, and threw them violently
against him.   Immediately afterwards he was found lying on the
ground about twelve feet from the place where he was at work,
with the ties upon his body.   The defendant's counsel substan-
tially concede that the plaintiff was injured in this manner.   Now,
while he assumed all risks ordinarily incident to his employment,
he assumed none that were not obvious to a reasonably prudent
man, and which might have fairly been anticipated.   Admitting
that he assumed those which might be apparent, should the dipper
descend upon him, it does not follow that he assumed every risk
which might result from machinery so defective as to permit the
improper, irregular, and dangerous dropping of the seven-ton dip-
per.   That it might descend, strike the ties at a point where the
car wheels would prove to be a fulcrum, and thus cause them to
be hurled with great force and rapidity into the air, might not be

apparent to the ordinary man. A laborer might protect himself from ordinary danger by carefully watching the dipper, and thus guarding against its erratic movements as it swung from side to side, but here was an unusual and unanticipated danger. Knowledge of unreliability in this respect, and that the dipper might drop upon him, would not conclusively charge him with notice that an injury might be expected from the descent of the dipper upon the ends of the ties.

In order to constitute an assumption of the risk of a defect, it is not only necessary that the employee should know of the defect, but the danger arising therefrom must also be known to him, or within the observation of a reasonably prudent man in his situation. In view of the fact that ordinarily the question of assumption of risk is for the jury to pass upon, we cannot agree with the contention of defendant's counsel that plaintiff assumed the risk of being injured because he remained at work with full knowledge of the defective machinery. It is possible, as urged by counsel for the defendant, that this accident was wholly caused by the negligence of a fellow servant, viz., that of one or both of the engineers; but, as before stated, there was testimony which would justify the jury in finding that the proximate cause of the injury was the defective machinery, and that it was not attributable to the incompetency and negligence of a fellow servant.

Order affirmed.